**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0186n.06**
**Filed: March 15, 2005**

**No. 03-4310**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| AGUSTIN SYLAJ, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| v. | ) |
| | ) **ON PETITION FOR REVIEW** |
| ALBERTO GONZALES, | ) **OF AN ORDER OF THE BOARD** |
| ATTORNEY GENERAL, | ) **OF IMMIGRATION APPEALS** |
| | ) |
| *Respondent*. | ) |
| | ) |
| | ) |

Before: **BOGGS, Chief Judge; MARTIN, Circuit Judge**; and **WEBER, Senior District Judge**.[1]

**PER CURIAM.** Petitioner appeals from a decision by the Board of Immigration Appeals ("BIA") denying his requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons discussed below, we **AFFIRM** the decision of the BIA.

---

[1] The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

1

**I.**

Petitioner Agustin Sylaj is a 29-year-old male and a native and citizen of Kosovo. After fleeing from Kosovo to Mexico, petitioner entered the United States on or about November 11, 2000, near Hidalgo, Texas. Petitioner was not admitted or paroled after an inspection by an Immigration Officer. The Immigration and Naturalization Service ("INS") commenced removal proceedings against petitioner pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), charging him with being removable pursuant to § 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i).

Petitioner moved to change venue from Harlingen, Texas to Detroit, Michigan. In his motion, he conceded removability. Petitioner declined to designate a country of removal, and the IJ therefore designated the "former Republic of Yugoslavia" as the country of removal pursuant to INA § 241(b), 8 U.S.C. § 1231(b).

In addition to the motion for change of venue, petitioner filed an application for asylum under § 208 of the INA, 8 U.S.C. § 1158. His application is also considered by the INS to be a request for withholding of removal under § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and for protection under the CAT. Petitioner bases his request for relief on a claim of past persecution or a well-founded fear of future persecution on account of race, nationality, membership in a particular social group, and political opinion.

A hearing on the merits was held on May 1, 2002. The IJ issued an oral decision at the conclusion of the hearing. The IJ recounted the following testimony by petitioner regarding the incidents that purportedly led him to flee Kosovo: In 1997, petitioner was arrested by Serbian police in his home village in Kosovo near the Albanian border. He was accused of border violations and

2

smuggling arms from Albania. Petitioner was taken to two different police stations and beaten. The beatings left marks on his body that lasted between two to three weeks. Petitioner stated at a later point in his testimony that he had been beaten to the point where he could not wear his shoes. Shortly after his arrest, petitioner's case was tried before a jury, and he was found guilty. The presiding judge, who was Albanian, observed the marks on petitioner's body and asked petitioner whether he wished to postpone serving his twenty-day sentence.

Following his release, petitioner went to Albania. He traveled back to Kosovo very rarely. He went to Albania in October of 1997, returned to Kosovo, and went back to Albania some time around March of 1998 because Serbian police officers came looking for him again.

In March of 1998, petitioner started carrying arms for the Kosovo Liberation Army (KLA). He did this ten or eleven times, the last time being approximately three weeks before the end of the war in Kosovo in March of 1999. Petitioner returned to his village in June of 1999 and stayed there until he left to come to the United States in August of 2000. While in his village, petitioner was approached by splinter elements of the KLA that wished to recruit him. After the war, these groups had become more active in criminal endeavors, and petitioner did not want to be involved with them. Petitioner therefore rejected the splinter groups' requests to join them. He was not harmed as a result of rejecting their overtures.

Before entering the United States, petitioner was in Mexico for a period of time. He registered as a refugee with the United Nations High Commissioner for Refugees. Petitioner testified at the hearing that he thought that he could remain in Mexico, but that he wished to come to the United States because he has relatives here and it is an advanced country.

The IJ found that petitioner was not credible because of omissions from his application for

3

asylum and a discrepancy between petitioner's application and his testimony, all of which the IJ deemed to be material. First, the IJ noted that petitioner had not included in the application either his narrative about being beaten to the point where he had marks on his body and could not wear shoes, or his description of his trial. Although petitioner testified that he had not included this information because he thought that questions on these matters would be asked at the hearing, the IJ rejected petitioner's explanation on the ground that petitioner had been represented by counsel when he completed his application. In addition, the IJ rejected petitioner's explanation as to why he had not included in his application his testimony that he had left Kosovo for Albania for the first time in October in 1997, had then come back to Kosovo, and had returned to Albania again in 1998 because the police were looking for him. Petitioner explained that this information was not in his application because he had not remembered it, but the IJ found petitioner's explanation to be unconvincing since petitioner had been represented by counsel when he filed the application and his application "says so little." The IJ also rejected as unconvincing petitioner's explanation that he had omitted information about being asked three times by KLA elements to join them because he had forgotten about these incidents. Finally, the IJ noted a discrepancy between the application and petitioner's testimony as to whether he was still a member of the KLA. The IJ rejected petitioner's assertion that this was probably an error on the application because petitioner had not adequately explained the contradiction.

After making an adverse credibility determination, the IJ proceeded to find that petitioner had not established past persecution. The IJ reasoned that petitioner's prosecution for border violations and carrying weapons across the border constituted a prosecution under the laws of the land and not persecution; his testimony as to the beatings he sustained was not credible; and changed country

4

conditions in Kosovo undercut petitioner's claim that he fears persecution by the Serbs if he returns. The IJ noted that petitioner had testified that the Serbs are a minority in Kosovo at this point, his brothers and father, who remain in Kosovo, have not suffered any harm under the "new conditions" there, and petitioner's fear is that the Serbs might come back to Kosovo at some point in the future. The IJ found that, if petitioner's testimony that he had been approached three times to join the KLA is accepted as true, this does not provide a basis for a well-founded fear of future persecution since petitioner did not suffer harm when he declined to join the KLA splinter groups.

The IJ concluded that, "even if [petitioner] is found to be credible, he has not established either past persecution, or a well-founded fear of future persecution on account of one of the statutorily enumerated grounds." The IJ therefore denied the application for asylum. The IJ determined that it followed from denial of the request for asylum that petitioner had not established eligibility for withholding of removal.

As to petitioner's claim under the CAT, the IJ determined that petitioner had not brought forth evidence of past torture. The IJ found that the injuries allegedly inflicted upon petitioner were too difficult to determine; petitioner had not presented evidence that he could not relocate to another part of Kosovo; and the human rights violations in Yugoslavia and Kosovo are not so widespread as to support a grant of relief under the CAT.

The IJ ordered that petitioner be removed and deported to Yugoslavia or, in the alternative, Kosovo.[2] Petitioner appealed the decision of the IJ to the BIA. The BIA summarily affirmed the IJ's decision without opinion.

---

[2] There is no longer a country of Yugoslavia, and Kosovo is not a country. Rather, Kosovo is a province in southwestern Serbia in the republic of Serbia and Montenegro, formerly known as the Federal Republic of Yugoslavia.

5

## II.

The court has jurisdiction over this appeal pursuant to the INA, 8 U.S.C. § 1252. Because the BIA affirmed the decision of the Immigration Judge (IJ) without opinion, we directly review the IJ's decision. *See Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). The administrative findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The United States Attorney General has discretion under the INA, 8 U.S.C. § 1158(a), to grant asylum to a "refugee." *Perkovic v. INS,* 33 F.3d 615, 620 (6th Cir. 1994). The disposition of an application for asylum involves a two-step inquiry: (1) whether the applicant qualifies as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant "merits a favorable exercise of discretion by the Attorney General." *Id.* (citing *INS v. Cardoza-Fonseca,* 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 1211 n.5 (1987)). The burden is on the applicant to establish that he qualifies as a refugee. 8 C.F.R. § 208.13(a)-(b). The applicant's testimony, if credible, "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a).

The court reviews the factual determination of whether an applicant qualifies as a refugee under a "substantial evidence" test. *Yu v. Ashcroft,* 364 F.3d 700, 702-03 (6th Cir. 2004). The BIA's determination must be upheld unless the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Ouda v. INS,* 324 F.3d 445, 451 (6th Cir. 2003) (italics in original). The petitioner must establish "that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution." *Id.*

Credibility determinations are findings of fact subject to the substantial evidence test. *Yu,* 364

F.3d at 703. The reversal of an adverse credibility determination is warranted only where "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.*; 8 U.S.C. § 1252(b)(4)(B).

The INA, 8 U.S.C. § 1101(a)(42)(A), defines a "refugee" as an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." Thus, there are two alternative methods by which an applicant for asylum may establish eligibility for asylum: (1) the applicant can prove that he or she has suffered past persecution, or (2) the applicant can prove that he or she has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b); *see Matter of Chen,* 20 I. & N. Dec. 16, 18, 1989 WL 331860 (BIA 1989).

In order to demonstrate eligibility for asylum on the basis of a well-founded fear of future persecution, an applicant must establish that: (1) he or she has a fear of persecution in his or her country of nationality on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear. 8 C.F.R. 208.13(b)(2). A well-founded fear of future persecution has both a subjective and objective component. *Perkovic,* 33 F.3d at 620. An applicant "must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.* at 620-21 (citing *Cardoza-Fonseca,* 480 U.S. at 430-31, 440, 107 S.Ct. at 1212-13, 1217). The applicant, however, is not required "to show that he probably will be persecuted if he is deported; '[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence

7

taking place.'" *Id.* at 621 (quoting *Cardoza-Fonseca,* 480 U.S. at 431, 107 S.Ct. at 1213).

Even if an applicant satisfies the burden of establishing that he or she qualifies as a refugee on the basis of either past persecution or a well-founded fear of future persecution, the BIA, in its discretion, may deny asylum. *Yu,* 364 F.3d at 702; 8 U.S.C. § 1158(a), (b). The BIA's discretionary judgment whether to grant relief on an application for asylum is "conclusive unless manifestly contrary to law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). An abuse of discretion occurs when the BIA exercises its discretion in a way that is arbitrary, irrational, or contrary to law. *Daneshvar v. Ashcroft,* 355 F.3d 615, 625-26 (6th Cir. 2004).

The INA provides for the withholding of removal under certain circumstances. Specifically, 8 U.S.C. § 1231(b)(3)(A) precludes the Attorney General from removing an alien to a country "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." The standard for a grant of withholding of removal is more stringent than the standard applicable to a claim for asylum. *Mikhailevitch,* 146 F.3d at 391 (citing *Cardoza-Fonseca,* 480 U.S. at 431-32, 107 S.Ct. 1207)). In order to be entitled to relief on an application for withholding of removal, an alien must establish that there is "a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (citing *INS v. Stevic,* 467 U.S. 407, 413, 103 S.Ct. 2489 (1984); *Mikhailevitch,* 146 F.3d at 391)).

A.      The IJ's credibility determination

Petitioner claims that the IJ's credibility determination is not supported by the record and is contrary to the weight of the evidence. We must uphold the IJ's credibility determination unless the record compels a contrary finding. *See Yu,* 364 F.3d at 703. For the reasons set forth below, the

8

record in this case does not compel us to reverse the IJ's adverse credibility determination.

In making his adverse credibility determination, the IJ relied primarily on the fact that petitioner's testimony at the hearing on the merits was much more detailed than the information provided in his application for asylum, despite the fact that petitioner had been represented by counsel when he completed the application. The IJ also relied on a discrepancy in the record as to whether petitioner is still a member of the KLA. The IJ articulated valid reasons as to why he found the omissions and discrepancy to be unconvincing, and his conclusions in this regard are substantially supported by the record. A reasonable fact-finder could consider petitioner's explanation that he omitted critical information from his application because he had forgotten about certain incidents to be an invalid excuse and indicative of a lack of credibility. A reasonable fact-finder could likewise reject as unconvincing petitioner's explanation that he had omitted important information from his application because he thought that he would be asked questions on pertinent matters at his hearing. The application expressly directs the applicant to provide details and specifics as to circumstances, dates, locations, and treatment, and petitioner could be expected to comply with these instructions since he was represented by counsel when he completed the application. His failure to supply pertinent information on the application, together with the lack of a sufficient justification for the omissions and the discrepancy regarding the status of petitioner's membership in the KLA, provide a sufficient basis for deeming petitioner's testimony to be untrustworthy. Accordingly, the IJ's finding that petitioner was not credible must be upheld under the highly deferential standard of review that the court applies to credibility determinations.

**B.      Petitioner's claim for asylum**

Petitioner argues that the IJ misconstrued substantial and critical parts of petitioner's testimony in determining that petitioner had not experienced past persecution. Petitioner contends that the IJ's ruling is contrary to the weight of the credible evidence adduced at the hearing and an abuse of discretion. As we are bound by the IJ's credibility determination, we cannot consider testimony that the IJ rejected as not credible in ascertaining whether petitioner satisfied his burden to show that he qualifies as a refugee on the basis of past persecution. When that evidence is disregarded, the record is insufficient to compel a finding that petitioner suffered past persecution.

Petitioner similarly argues that the IJ's finding that petitioner does not reasonably fear future persecution because of changed country conditions is contrary to the weight of the credible evidence adduced at the hearing and an abuse of discretion. Petitioner argues that the IJ was not justified in relying on materials submitted by the government concerning the presence of NATO forces in the region to support his finding. Petitioner contends that despite the presence of NATO forces, Kosovo remains subject to Serbian legal control, the Serbs have the authority to impose strictures similar to those enforced during the Milosevic regime's ethnic-cleansing operation, and there is a resurgence of the nationalist mindset among the Serbs. While petitioner's assertions suggest the possibility that the political situation in Kosovo may become perilous at some point in the future, they do not compel a finding that petitioner has a well-founded fear that he will be subjected to persecution on the basis of one of the statutorily enumerated grounds if he is removed to his home country at this time.

Petitioner also objects to the IJ's reliance on a finding of a diminished threat of persecution by KLA splinter groups as an improper taking of administrative notice. The IJ stated in his opinion that even if petitioner's testimony regarding the overtures by KLA groups were deemed credible,

10

these incidents did not support a finding of a well-founded fear of future persecution since petitioner had not suffered any harm when he declined to join the groups in the past. It was reasonable for the IJ to deduce from a lack of reprisals in the past that petitioner did not have a well-founded fear of future harm at the hands of KLA splinter groups. The record does not compel a contrary conclusion.

**C.      Petitioner's request for withholding of removal**

The IJ determined that, because petitioner had not established eligibility for asylum, it followed that petitioner had not established eligibility for withholding of removal pursuant to § 241(b)(3). Considering the record in light of the IJ's credibility determination, and applying the more stringent standard that governs a withholding of removal, a contrary finding on the matter of withholding of removal is not compelled.

**D.      Petitioner's request for relief under the CAT**

The IJ also found that petitioner had not made the necessary showing for relief under the CAT, which requires the petitioner to establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *See* 8 C.F.R. § 208.16(c)(2). The IJ determined that petitioner's application was not credible; petitioner had not produced evidence of past torture in that the scope of injuries inflicted upon him was too difficult to determine; petitioner had failed to show that he could not relocate to another part of Kosovo where he would likely not be tortured; and the evidence of record did not support the conclusion that human rights violations in Yugoslavia and Kosovo are so widespread as to support a grant of relief under the CAT.

Petitioner argues that the evidence supports his request for relief under the CAT. In support of his argument, petitioner points to his testimony that he was wanted by the Serbian police for activities he undertook as a member of the KLA; that he was wanted by KLA splinter groups who

11

aggressively attempted to recruit him to participate in retribution against the Serbs; that past persecution had forced him to flee Kosovo; and that he had a fear of returning to Kosovo because of the unstable political situation there and his well-founded fear of a deadly conflict with KLA splinter groups if he continued to refuse to join them.

Again taking into account the IJ's credibility determination, the IJ's finding that petitioner did not show that it was more likely than not that he would be tortured if forced to return to Kosovo or Yugoslavia is supported by substantial evidence. Even if petitioner's testimony as to the above matters is deemed credible, a reasonable adjudicator would not be compelled to reach a contrary decision based on that testimony. Accordingly, the determination that petitioner is not entitled to relief under the CAT must be upheld.

## E. The BIA's affirmance without opinion

Petitioner argues that the BIA failed to follow proper procedure when it affirmed the IJ's decision without opinion. Petitioner alleges that there were obvious flaws in the IJ's decision, thus necessitating assignment of the case to a three-member panel for review.

Title 8 C.F.R. § 3.1(e)(4)(i) sets forth the requirements for an "affirmance without opinion" by the BIA:

> The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
> (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

These criteria are satisfied here. Therefore, the BIA did not err by affirming the IJ's decision without opinion.

## III.

For these reasons, the decision of the BIA is **AFFIRMED.**